313 So.2d 358 (1975)
Mrs. Betty Albert Crow HOOVER
v.
Rodney E. HOOVER and John C. Dodt, III.
No. 6423.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1975.
*359 Frank J. D'Amico, New Orleans, for plaintiff-appellant.
Cecil M. Burglass, Jr., New Orleans, for defendant-appellee John C. Dodt, III.
Before SCHOTT, MORIAL and BEER, JJ.
SCHOTT, Judge.
Plaintiff filed suit against her husband defendant Hoover and defendant Dodt on a promissory note dated March 16, 1971, for $33,000 alleging that she was induced to release a collateral mortgage note securing the note sued on by representations from defendants that her claim was secured by properties at 736-738 and 812-814 Frenchman Streets. In a supplemental and amending petition she further alleged that her funds were used to improve the two mentioned properties as well as 730-732 Frenchman Street, that all of the properties were owned by Dodt, and that Dodt had been unjustly enriched thereby.
*360 This suit was dismissed as against Hoover because plaintiff and Hoover were married and not judicially separated at the time the suit was filed. Following a judicial separation a subsequent suit was filed by plaintiff against her husband and the two cases were consolidated for trial.
The trial court rendered judgment in favor of plaintiff against Hoover on the note in the amount of $33,000 plus interest, attorneys' fees and costs, and in favor of plaintiff against Dodt in the amount of $8,800. The judge found that Dodt had been unjustly enriched in that amount with respect to the property at 736-738 Frenchman Street, but he rejected the claim of unjust enrichment as to the other two properties. Plaintiff has appealed from that judgment not with respect to the original $8,800 award pertaining to the property at 736-738 but only as to the dismissal of her claims pertaining to the other two properties.
Plaintiff and Hoover became acquainted in 1970 and were married on May 1, 1971. In the meantime Hoover, a real estate man who was specially interested in renovation and restoration of old buildings, prevailed upon plaintiff to provide him with financial assistance in his ventures. This assistance included not only the $33,000 loan to Hoover on the note but additional sums in the form of checks to Hoover's order between March 15 and September 22, 1971. In connection with the note plaintiff was originally provided with security in the form of a pledge to her of a $50,000 collateral mortgage note which in turn was secured by a mortgage on the properties at 730-732 and 736-738 Frenchman Street. Dodt's liability on the $33,000 note was expressly limited to the collateral security pledged. In order to understand the facts a summary is here provided of the transactions regarding each peice of property.
730-732 Frenchman Street:
This was acquired by Dodt from a Mrs. Foote in December, 1970, for $25,000. On February 8, 1971, Dodt sold a one-half interest in the property to Hoover by means of a typical homestead financed transaction. Dodt sold to Homestead Savings Association for $26,500 cash, and on the same day the property was resold to Dodt and Hoover for $31,500 credit. On April 30, 1971, Dodt sold his remaining half interest along with interests in two other properties (including 736-738 Frenchman discussed below) for $7,000 represented by a promissory note payable on demand. This sale was recorded in the mortgage records of the Parish on May 24, 1971. On October 19, 1971, this property was sold by Dodt and Hoover to one Dr. Holditch in a homestead transaction in which Dodt and Hoover sold to Homestead Savings Association for $50,000 cash and Homestead Savings Association resold to Dr. Holditch for $38,400 credit. Attached to the sales are releases of the $31,500 mortgage given on February 8, 1971, by Dodt and Hoover, and of the $50,000 collateral mortgage of March 16, 1971. In connection with this transaction a second mortgage was given by Dr. Holditch to Hoover for $9,600. The evidence shows that this second mortgage note was then purchased from Hoover by Dodt's company for $5,342.19.
The record shows that Dodt became interested and involved in this property before plaintiff came upon the scene. As record owner of the property he had begun some renovation and had utilized the services of Hoover for that purpose. Plaintiff raises many questions about the ultimate disposition of this property which she claims cast suspicion upon Dodt and demonstrate that he was taking advantage of her in order to enrich himself. She asks why was it necessary for Dodt to join Hoover in the conveyance to the Homestead in October if he had already conveyed his interest to Hoover in April. She questions the authority of Hoover to release the collateral mortgage note, she attempts to cast suspicion on everyone else involved in the Homestead transaction of October 19, and she particularly complains about the fact that Dodt in the end holds a $9,600 second mortgage note on the property *361 which is now owned by Holditch. But upon our review of the record we find that these questions and complaints are satisfactorily answered by Dodt and that they do not support plaintiff's claim of unjust enrichment on his part.
The record is abundantly clear that Hoover's penchant for spending large sums of money on renovation was only exceeded by his optimism that these ventures would somehow become profitable. The record is likewise clear that Dodt was of some financial substance and that he and Hoover were close friends and associates. Whether it was their intention for Hoover to purchase this property from Dodt in February, 1971, when according to the record Hoover acquired only a one-half interest, the fact remains that Dodt sold his remaining interest to Hoover on April 30. Because this was an all credit transaction we can see why the Homestead would require Dodt to join Hoover in the sale in October since Dodt had retained a vendor's privilege on the property. The record further shows that Hoover was somewhat desperate for the Holditch sale to pass. With plaintiff's full understanding, agreement and cooperation Hoover had used the $50,000 collateral mortgage note to secure an additional loan of $12,000. When the Holditch sale was about to take place, Hoover's $12,000 loan was due and it developed that Holditch could not take title without borrowing an additional $9,600 on a second mortgage. Hoover could not carry the mortgage and Dodt purchased it from him for the $5,342.19. With these funds as well as the other cash he realized from this sale Hoover was able to pay off the $12,000 loan, retrieve the $50,000 collateral mortgage note and have it cancelled in connection with the sale of the property.
Plaintiff testified that Dodt repeatedly assured her that he was going to repay her whatever funds she expended on this property. Dodt denied that he owed her anything on this property and maintained that when the property was finally sold to Holditch he came out even and realized no profit whatsoever. Dodt's testimony is supported by the record and in any event the evidence is not sufficient to support plaintiff's position that Dodt profited on this house at her expense or was unjustly enriched by her expenditures. We see nothing sinister about Dodt's purchase of the second mortgage note. Holditch's position was at best shaky and Dodt's purchase of the $9,600 second mortgage note for $5,342.19 was hardly a bargain. Had the sale fallen through as it almost did the holder of the collateral mortgage note might have foreclosed and plaintiff might have been worse off than she turned out to be since her husband was obligated to pay the $12,000 loan and he was the record owner of this property securing the note.
812-814 Frenchman Street:
This property was never owned by Dodt while plaintiff's funds were being spent by Hoover on its restoration. It was originally acquired by one David Bailey for $17,500 and was financed by a homestead loan for $12,000 and a second mortgage to Bailey's vendor for $3,500. Hoover, his brother and one Jourdan had become interested in this property as a subject for restoration and in connection therewith Jourdan on November 30, 1970, agreed to purchase the property from Bailey for $18,000 under a lease purchase agreement. Considerable sums were spent on this property by the three and on June 21, 1971, Hoover agreed to purchase the property from Jourdan for $65,000 conditioned upon his ability to borrow $52,000 on the property. Apparently that agreement fell through because the property never achieved a higher CAB appraisal than $43,000, and in November, 1971, another agreement to purchase was entered into between Hoover and Bailey. This time the price was fixed at $23,000 with the proviso that Hoover would pay other costs such as attorneys' fees, accrued rent, expenses owed to a representative of Bailey, and costs which had been incurred by Bailey in foreclosure proceedings instituted by the holder of the second mortgage on the property. In addition, *362 liens for materials and labor furnished to the property in excess of $8,500 had been recorded and would have to be assumed and paid off by the purchaser. It is obvious that Hoover was not in a financial position to carry out the purchase. With this background, on April 17, 1972, the property was sold by Bailey to Dodt in a homestead transaction wherein there was a sale by Bailey to the Homestead for $23,000 cash and a resale by the Homestead to Dodt for $34,400 credit. According to Dodt's testimony, his total cost for the property was $43,644, consisting of the purchase price, the legal fees, the liens and the bills that were due for the construction work.
Plaintiff makes much over Dodt's testimony that he considers this property to be worth over $50,000 and that subsequent to his purchase of the property he paid Jourdan almost $5,000 despite the fact that Jourdan had not filed a lien against the property. The trial judge in his reasons for judgment attached significance to the fact that plaintiff was afforded an opportunity to protect her own interest by purchasing the property but turned down the opportunity, and that Dodt merely did that which plaintiff declined to do herself. Plaintiff contends that this finding is not supported by the evidence.
Plaintiff testified that she was never afforded an opportunity to purchase this property on the same terms as Dodt purchased it. She said the price quoted to her by Cecil Burglass, attorney for Bailey, was considerably higher than the price paid by Dodt. Her testimony was corroborated by that of her father who testified that he too spoke to Burglass on plaintiff's behalf about purchasing the property. On the other hand, Burglass testified that the property was offered to plaintiff on exactly the same terms as was agreed upon by Dodt and that she declined to accept the offer. We have no basis for disturbing the trial judge's resolution of the conflicts in this testimony in favor of Burglass. According to Burglass, he did discuss with plaintiff the ramifications of her purchasing the property while she was still married to Hoover and it may very well be that this played a part in her decision not to purchase the property at that time. In any event, when Dodt acquired the property all of the earmarks of a distressed sale by Bailey were in existence. Foreclosure proceedings had been instituted by the holder of the second mortgage and a multitude of liens had been filed against the property. Bailey was now living in Oregon and was handling the property through an attorney. According to Burglass, he suggested to Dodt that he might buy the property as a good investment under the circumstances, and we see no legal or equitable reason why Dodt could not do so. In every sense he was a third party as to this property and had as much right to purchase it as anyone else in the market place. If the property was worth over $50,000 in Dodt's judgment, that was a legitimate motive for him to pay $43,644 for the property. Most knowledgeable buyers pay less than they think property is worth when they make a purchase. Finally, we see nothing sinister in Dodt's decision to pay Jourdan his balance. The record shows that Jourdan did supply considerable labor in the restoration of the premises and Dodt, who purchased the property, was justified in paying Jourdan for his labor without any explanation being due to plaintiff.
736-738 Frenchman Street:
This property was acquired by Dodt in September, 1969. On April 30, 1971, Dodt sold a half interest in this property along with his half interest in the property at 730-732 Frenchman and a third property for $7,000 in the form of a promissory note. The sale of the property was subject to a homestead mortgage of $13,300 and the $50,000 collateral mortgage securing plaintiff's $33,000 note. On April 4, 1973, Hoover sold back to Dodt his half interest in this property and the remaining third piece of property for $7,000 cash. The note for $7,000 had never been paid and in *363 effect this was a dation en paiement or an acknowledgment that the property was at all times owned by Dodt in the first instance.
At the trial of the case Dodt admitted that he was the owner of this property and agreed to repay plaintiff for whatever amount she was able to show from her records that she had spent in the improvement of this property. Her ledger supplied the $8,800 figure which the trial judge awarded against Dodt. While this part of the judgment is not before us in this case, these facts are recited so as to present a full picture of these various transactions and to provide the background for our disposition of a companion case being decided by us on this date involving this property.
In support of her argument that she is entitled to relief against Dodt on the theory of unjust enrichment, plaintiff cites Edmonston v. A-Second Mortgage Co., 289 So.2d 116 (La.Sup.Ct.1974) and Minyard v. Curtis Products, Inc., 251 La. 624, 205 So. 2d 422 (1968). Aside from the fact that a mere reading of these two cases readily distinguishes them from the instant case on facts, when the five prerequisites laid down in these cases for a successful unjust enrichment suit are considered we conclude that plaintiff cannot prevail. These pre-requisites are that, 1) there must be an enrichment, 2) there must be an impoverishment, 3) there must be a connection between the enrichment and resulting impoverishment, 4) there must be an absence of justification or cause for the enrichment and impoverishment, and 5) the action will only be allowed when there is no other remedy at law, i. e., the action is subsidiary or corrective in nature.
The facts do not support plaintiff's contention that Dodt was enriched in the first instance. He paid a substantial price for the property at 812-814 Frenchman Street and while he thought the property was worth more than he paid this is at best speculative. But assuming that there was an enrichment and conceding that plaintiff was impoverished to the extent that her funds were put into the restoration of this property we see no connection between the enrichment and the resulting impoverishment. We know that the price paid was adequate to pay off existing mortgages and liens which had been incurred by the then owner Bailey. The property was on the market for the price Dodt paid and anyone could have bought it for that price. Plaintiff's money spent on the property did not have the effect of making the property salable for the price Dodt paid. Rather, it was the distressed condition of Bailey's ownership. Furthermore, this demonstrates that a fourth prerequisite did not exist, to wit, absence of justification. There was no reason why Dodt could not buy the property. It was in distress and had Dodt not bought it someone else might have or perhaps it would have gone to auction by way of foreclosure proceedings. We see no reason who Dodt was precluded from picking up the property under these circumstances. Finally, plaintiff had another remedy at law which she has exercised, namely, she has taken a judgment against Hoover for the amount of her claim and while it may very well be that Hoover is insolvent nothing in the record compels that conclusion.
The same conclusion follows as to 730-732 Frenchman Street. Dodt's acquisition of a $9,600 second mortgage note for $5,342.19 was not necessarily an enrichment and the sale of the property by plaintiff's husband under the circumstances existing at the time was not necessarily an impoverishment. Perhaps it was an advantage to her.
Clearly, plaintiff relying on the doctrine of unjust enrichment must prove that each of the prerequisites existed and we have concluded that she failed to carry her burden of proof.
Finally, plaintiff contends that she has a right under LSA-C.C. Art. 508 to recover from Dodt on the theory that a third person who places or pays for improvements *364 on the land of another has a right to recover the value of the materials and workmanship, money spent or a sum equal to the enhanced value of the land. This argument rests on the premise that Dodt was the owner of these properties when plaintiff's funds were used for the improvement thereon, and the evidence does not show that this premise existed in the first instance. Accordingly, the judgment appealed from is affirmed at plaintiff's cost.
Affirmed.