MARVIN, Judge.
Cowley, the lessor-appellant, appeals from a judgment below rejecting his demands against Logan, lessee-appellee, for rent allegedly due under a written lease of farm land. We affirm.
During the time surrounding the term of the lease, the federal government had a program of supporting the price of cotton by paying to the farmer a fixed price per pound for cotton produced on acreage allotted or allowed to the farmer by the Agricultural Stabilization and Conservation Service (ASCS) of the U.S. Department of Agriculture. The lease involved here the cotton acreage allotment originally available to Lessor on approximately 291 acres for the year 1971. Before the lease was entered into, Cowley grew wheat on this acreage.
The lease provided that Cowley’s cotton allotment would be worked by Logan and his co-lessee, Ortego, and that “the government check for these properties will be received by Lessor . . . ” The applicable federal laws and regulations (7 CFR 795.1) imposed an annual limitation of $55,000.00 on the amount which would be paid under the cotton allotment program to any one participant in the program. In partnership with his son on other lands, Logan also participated in the cotton allotment program during the time Cowley’s lands were being farmed under the program and the lease.
Cowley made application for, and received from ASCS under the price support program, $20,500.00, which was the maximum allowed by the regulations for the acreage being farmed by Logan and Orte-go under the lease. Cowley claimed from ASCS all of the program payments and “reported” (to use ASCS terminology) on a government form that there were no other persons sharing in the cotton. A subsequent review or audit by the government disclosed that the cotton had been ginned by Logan and Ortego. Because Logan had received price support payments through operations elsewhere with his son, the maximum payment limitation of $55,000.00 applied to Logan’s interest in the cotton produced on the Cowley acreage allotment. After hearings and appeals on this issue within the U.S. Department of Agriculture, Cowley refunded to the government $7,309.04. Cowley then brought suit against Logan for this amount and for the “expenses” incurred by Cowley in attending hearings with federal agencies.
In the trial court, Cowley contended the true consideration of the lease was that he would receive maximum allotment of $20,500.00 from the government. Logan contended below that he never discussed with Cowley or otherwise guaranteed or agreed to the dollar amount which Logan was to receive and that Cowley knew of his other cotton farming operations. All *502 factual disputes were resolved by the trial court in favor of Logan.
On appeal, Cowley contends that Logan was “unjustly enriched” at Cowley’s expense or impoverishment and that restitution should be ordered' on the authority of Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1968). Minyard is in-apposite on its facts. Minyard sought restitution of damages it had to pay to a third party because of the failure of materials manufactured by the defendant but guaranteed to the third party by Minyard. The Supreme Court summarized the factual and legal basis for applying the principle in these words:
“Even though Minyard has been compelled to pay the amount [to the third party] . . . because of its technical or constructive liability, when the real fault or cause of damage to [the third party] was the manufacturer’s defective caulking compound, the law provides no express statutory remedy for Minyard in this situation.
“The courts have, however, since early times, sought to grant relief in such a situation.” 205 So.2d 427. (Material in brackets supplied for clarity).
Here, the parties have written their own law by the terms of the lease. Here, Logan did not agree to pay Cowley any fixed dollar amount for the lease. The agreement was that Cowley would receive the “government check.” ' No dollar amount was mentioned in the lease agreement. Logan received nothing from Cowley under the lease other than the privilege of producing and selling cotton from the land. Logan was to receive, and received, nothing under the lease with Cowley from the government price support program. Cowley received the government check. Logan and Ortego were to receive, and received, the cotton produced. This is exactly what the lease contemplated. This was the reasoning of the trial court, which we approve.
The provisions of the written lease do not support Cowley’s contention of the consideration being the maximum government subsidy. There are twenty-two typewritten lines to the lease after the introductory paragraph. Eleven of these lines were deleted or changed in part by the parties to the lease. The agreement was typewritten by Mrs. Cowley. These factors support the lower court’s factual conclusion that Cowley failed to prove by a preponderance of the evidence that Logan agreed that Cowley was to receive the maximum allotment. Both Logan and Cowley, as farmers, were knowledgeable and experienced about the price support program, how it worked, and the manner in which the subsidy was allowed. It would have been a simple matter for them to have written words or dollar amounts onto the typewritten agreement to the effect contended by Cowley had this been their intention. If the term “government check” be ambiguous, the ambiguity must be interpreted in favor of the Lessee. See Beebe v. Schmitt, 308 So.2d 887, 888 (La. App. 2d Cir.1975).
We find no manifest error on the part of the trial court.
Affirmed at appellant’s cost.