ELLIS, Judge:
Cameron Crew Boats, Inc. and Cameron Boat Rentals, Inc. were the owners and operators of the crew boat M/V Gulf Mist, which was acquired on March 4, 1970, from Swiftships, Inc., the builder. Among the equipment installed in the boat by Swiftships was a Twin Disc MG 514 clutch, manufactured by Twin Disc, Inc. The clutch had been purchased by Swift-ships from Sewart Supply, Inc., a distributor for Twin Disc.
The Gulf Mist was placed in service for a short while to Mobil Oil Company, and then was leased to Superior Oil Company. Throughout the time of this service, the clutch was noisy, and, on one occasion, some work was done on it by Lake Charles Diesel, Inc., a dealer for Sewart.
On February 3, 1971, the clutch failed, and the boat was brought to Lake Charles Diesel for repair. It was determined what parts were needed to repair the clutch, and George LeBoeuf, manager of the Cameron branch of Lake Charles Diesel, called Patrick Fields, store manager for Sewart, to get the parts. Sewart did not have all of the necessary parts in stock.
According to Mr. Fields, Mr. LeBoeuf then asked about an exchange and Mr. Fields said that he,had a new clutch which he would exchange for the burned out clutch, if the cost price of the new clutch plus $150.00 to rebuild the old clutch was paid. Mr. Fields testified that after consulting with Mr. Norman McCall of the plaintiff companies, Mr. LeBoeuf called back and ordered the new clutch sent immediately. The clutch was put on a “hot shot” truck that same night, and was installed the next morning. Mr. Fields stated that he instructed the driver to bring *686 back the burned out clutch, which was not done.
Mr. LeBoeuf testified that after Mr. Fields told him the parts were not in stock, Mr. Fields said that there was a new clutch available which he would sell for $2,178.00. Mr. LeBoeuf testified that no exchange was discussed at any time. He further stated that he advised Mr. Fields that the burned out clutch might be still in warranty. Mr. McCall authorized Mr. LeBoeuf to buy the new clutch.
Mr. McCall, who was present during most of Mr. LeBoeuf’s telephone conversation with Mr. Fields, confirmed that he only agreed to buy a new clutch. He said that he would not have agreed to an exchange because the old clutch was still under warranty. He stated that he bought the new clutch because it was the only way he could get his boat back in service immediately.
About three days later, Mr. McCall returned the burned out clutch to Sewart. He stated that he was under the impression that it would be rebuilt and returned to him under the warranty.
On March 6, 1971, Cameron paid the invoice presented by Sewart for the transaction. The invoice was dated February 8, 1971, after the transaction and after the burned out clutch was returned, and described the item sold as follows:
“MG 514 2:00:1
“S/N 375637
“Spec 32309
“Exchange”
The price was $2,178.34 and there was included a $150.00 charge for “Flat rate labor to rebuild old clutch.” The total amount of the invoice, including tax, was $2,398.19.
Mr. McCall testified that he saw the word “exchange” on the invoice, but that it did not mean anything to him. He stated that he had never entered into an exchange transaction. He thought he was buying a new clutch and paying $150.00 to have the old clutch repaired under his warranty.
About 90 days after February 3, 1971, Mr. Fields .sent the damaged parts from the clutch to Twin Disc, which eventually gave Sewart a credit for all of them, amounting to a total of $1,226.01. The old clutch was rebuilt by Sewart and placed in its exchange inventory. It was eventually exchanged, at a time and under circumstances unknown.
Mr. McCall made a number of inquiries of Sewart relative to the warranty, and on April 20, 1971, placed a call to Twin Disc when he could get no information from Sewart. Shortly thereafter, he was offered a settlement of a little over $800.00 by Sewart, which he rejected. After some correspondence by his attorney, this suit was filed, seeking $2,785.03 in damages.
After trial on the merits, judgment was rendered in favor of plaintiffs and against Sewart and Twin Disc, for $1,376.01, being the amount of $1,226.01 allowed by Twin Disc to Sewart under the warranty, and the $150.00 paid by Cameron to rebuild the clutch. From that judgment, plaintiffs have appealed.
In reaching the above conclusion, the trial judge found that an exchange was agreed to by the parties on February 3, 1971, but that Cameron had reserved its right under the warranty of the old clutch.
The warranty referred to herein reads as follows:
“Twin Disc, Incorporated guarantees all assembled products and parts, except parts or equipment on which written warranties by respective manufacturers thereof are furnished the original purchaser, against defective material or workmanship for a period of eighteen (18) months from the date of original shipment by Twin Disc, Inc. to its customer, but not to exceed twelve (12) months or two thousand (2,000) hours of service, whichever occurs first.
*687 “B. Complete units or 'parts returned within this warranty period, transportation charges prepaid, which are found by Twin Disc, Inc. to be defective in material or workmanship shall at their option be repaired, replaced or credited. No claims will be allowed which in the opinion of Twin Disc, Inc. result from complete units or parts having been subjected to abuse or neglect or where failure has been caused by accident.”
It is clear from the record that the old clutch was not damaged, abused or neglected, and that the failure occurred under conditions of normal usage. It was stipulated that there were less than 2,000 hours of use. The failure occurred during the first twelve months of service. We find that plaintiff is entitled to the benefit of the provisions of the warranty above quoted.
From the testimony of the parties involved in the transaction on February 3, 1971, we conclude that there was no mutual understanding reached that night. Clearly, however, Mr. McCall thought he had bought a clutch, and equally clearly, Mr. Fields thought that he had entered into an exchange agreement. We think it apparent that Mr. McCall would not have traded away a fully warrented clutch, and paid $2,398.19 additional for a new clutch. It is equally apparent that Mr. Fields would not have sold a clutch for $2,178.34 when the normal price under these circumstances was $2,792.00.
We attach little importance to the payment of the invoice as worded, since it was not prepared until five days after the sale and two days after the old clutch was returned. Mr. McCall testified that he was not familiar with that type of transaction, and that he attached no significance to the word “exchange” written on the invoice.
Article 1779 of the Civil Code provides:
“Four requisites are necessary to the validity of a contract:
“1. Parties legally capable of contracting.
“2. Their consent legally given.
“3. A certain object, which forms the matter of agreement.
“4. A lawful purpose.”
Article 1819 of the Civil Code provides:
“Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by—
“Error;
“Fraud;
“Violence;
“Threats.”
Article 1841 of the Civil Code provides:
“Error as to the nature of the contract will render it void.
“The nature of the contract is that which characterizes the obligation which it creates. Thus, if the party receives property, and from error or ambiguity in the words accompanying the delivery, believes that he has purchased, while he who delivers intends only to pledge, there is not (no) contract.”
We find that there was no mutual consent or understanding as to the nature of the agreement entered into on the night of February 3, 1971, and consequently no contract was made at that time. It is obvious, however, that mutual obligations did arise from the acts of the parties. We note that all of the actions taken by the parties hereto were consistent with their understanding of the agreement.
*688 Article 2293 of the Civil Code provides:
“Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties.”
Article 2294 of the Civil Code provides:
“All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi contracts. But there are two principal kinds which give rise to them, to wit: The transaction of another’s business, and the payment of a thing not due.”
We are of the opinion that the actions of the parties hereto have created mutual quasi-contractual obligations, which must be determined by the analogical application of Articles 21 and 1965 of the Civil Code. Those articles provide:
Article 21:
“In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent.” Article 1965:
“The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity.”
See Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967); Actio de in Rem Verso in Louisiana: Minyard v. Curtis Products, Inc., 43 Tul.L.Rev. 263 (1969).
Plaintiffs have, in effect, paid the regular price of $2,792.00 for one clutch, which failed, and $2,178.34 for a second similar clutch. They also paid $150.00 to have the old clutch rebuilt. Under the terms of the warranty, they were entitled to have the old clutch repaired, replaced, or to receive an equivalent credit. Since it is no longer possible to repair or replace the old clutch, they are entitled to a credit. The testimony of Mr. Fields is that a rebuilt clutch in 1971 was worth $2,550,00. Plaintiffs should have a credit for that amount, plus a credit for the $150.00 paid by them to have the clutch rebuilt.
On the other hand, Sewart received only its cost price for the second clutch, and we are of the opinion that it would not have sold the clutch at that price had it not mistakenly believed that it had entered into a contract of exchange. It should be credited with the difference between the regular price of $2,792.00 and its cost of $2,178.34, or $613.66.
The judgment appealed from is therefore amended so as to increase the amount thereof to $2,086.34, and, as amended, it is affirmed, at defendants’ cost.
Amended and affirmed.