357 So.2d 572 (1978)
T. D. SPILLER, Jr.
v.
Peggy Mattingly HERPEL, Individually and as Testamentary Executrix of the Succession of Ama Spiller Mattingly.
No. 11637.
Court of Appeal of Louisiana, First Circuit.
March 20, 1978.
Writ Refused May 12, 1978.
*573 Davis A. Gueymard and James H. Hynes, Baton Rouge, for plaintiff and appellant.
Donald L. Peltier, Peltier & Peltier, Thibodaux, for defendant and appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
ELLIS, Judge.
On November 18, 1963, Mrs. Ama Spiller Mattingly executed a statutory will containing the following bequest:
"I give and bequeath to my nephew, T. D. Spiller, Jr., the sum of Ten Thousand ($10,000.00) Dollars and also all of my interest in the land and residence located at 403 Ridgefield Road, Thibodaux, Louisiana,. . . ."
On March 22, 1968, Mrs. Mattingly was interdicted by judgment of the 17th Judicial District Court, and William W. Herpel, husband of her only daughter, Peggy Mattingly Herpel, was qualified as her curator.
Prior to her interdiction and for some time thereafter, Mrs. Mattingly resided in her home, which was the property bequeathed to Mr. Spiller. After it became necessary to place Mrs. Mattingly in a nursing home, the property on Ridgefield Road stood vacant for most of the time, although it was rented for several months.
Because the property was deteriorating, Mr. and Mrs. Herpel, who were unaware of the bequest to Mr. Spiller, decided to sell it. Court authorization was properly obtained to sell the house for $32,500.00 cash, and the sale was passed on November 2, 1971. It is undisputed that the sale of the property *574 was not necessary for the support and maintenance of Mrs. Mattingly, whose income was more than sufficient for her needs. The funds received were deposited to Mrs. Mattingly's account, and were subsequently loaned to Mattingly Tractor & Implement Co., Inc., a family corporation, in which Mrs. Mattingly owned more than a 60 per cent interest. Mr. Herpel was the general manager of the corporation. As of Mrs. Mattingly's death these funds had not been repaid, and stood as credits in her name on the books of the corporation.
Mrs. Mattingly died on April 9, 1975, and her will of November 18, 1963, was admitted to probate. Under the terms thereof, Mrs. Herpel was named as executrix of the estate. Thereafter, plaintiff herein made demand on Mrs. Herpel, as executrix for the delivery of the legacy of the immovable property bequeathed to him. The executrix did not accede to the demand, on the ground that the bequest had lapsed or been revoked because of the sale of the property by the curator.
Plaintiff then filed the suit against Mrs. Herpel, demanding the delivery of the legacy, or the value thereof. Alternatively, plaintiff has alleged a cause of action for unjust enrichment, under Articles 21, 1965, 2292 and 2294 of the Civil Code. After trial on the merits, judgment was rendered dismissing plaintiff's suit, and he has appealed to this court.
The trial judge correctly decided the issues presented to him in a scholarly written opinion, which we now adopt as our own:
"It has been stipulated by the parties that the $10,000.00 particular legacy originally claimed in this litigation has been delivered in accordance with law and the only matter remaining to be resolved by this Court is the disposition of the particular legacy involving the premises located on Ridgefield Road in Thibodaux, Louisiana.
"It should be noted at the outset in this opinion that the plaintiff in his brief acknowledges the following: (1) `At the outset it must be understood that there is no way the executrix can be compelled to deliver the particular legacy of the residence for the very simple reason that she does not have it to deliver.' (2) `Obviously, the validity of the sale to Mr. Gros has not and cannot be attacked in this proceeding. Mr. Gros is not a party to this proceeding and the validity of the judgment authorizing the sale would not, in any event, be subject to collateral attack.' (3) `The reason why plaintiff has not brought a direct action to set aside the sale is also apparent. It is because such an effort would be totally futile in that there is no evidence in this proceeding nor is there any indication in the record of the interdiction to suggest that the formalities of law had not been complied with,' and (4) `Our examination of the record in the interdiction proceeding leads us to conclude that all formalities of law were, in fact, complied with. For these reasons we readily agree and respectfully submit that the property itself is totally beyond the reach of plaintiff.'
"The basic Louisiana law dealing with the validity of the bequest of the premises in this case may be found in Section 6 of Chapter 6 of Title II of the Louisiana Revised Civil Code which said section is entitled `Of the Revocation of Testaments and of Their Caducity' which contains Articles 1690 through 1711. The caducity or inheritable quality of a donation mortis causa can be destroyed or rendered ineffective in two ways. The first is by revocation by the testator and the second is by lapse of the legacy. Revocation by the act of the testator can be express or tacit, or general or particular. R. C. C. Article 1691. The testator by his own act can revoke a testament by (1) another testament (R. C. C. Article 1692) or (2) by the alienation of the thing bequeathed by donation or sale (R. C. C. Article 1695). An inheritance lapses by (1) the prior death of an instituted heir or the legatee (R. C. C. Article 1697), (2) where the thing bequeathed had totally perished during the lifetime of the testator (R. C. C. Article 1700), (3) when the instituted heir or the legatee rejects it or is incapable of receiving it (R. C. C. Article 1703), (4) by the subsequent birth of a legitimate child to *575 the testator or by the subsequent adoption or legitimation of a child by the testator, unless the testator has made testamentary provisions to the contrary or has made testamentary provisions for such child (R. C. C. Article 1705), or (5) the testamentary disposition is revoked on the grounds established by law (R. C. C. Article 1710). As pointed out by the very thorough and professional briefs of the attorneys for the parties to this litigation there is no Louisiana jurisprudence directly in point to guide the Court in this case. Accordingly, we must resort to collateral authority and analogy to reach a conclusion.
"The commentators on the French Civil Code and the leading authority on Succession Law in the State of Louisiana are of the opinion that a revocation of a testamentary bequest can only be made by the act of the testator himself personally, either express or tacit, and cannot be made by a third person or someone acting on his behalf. See Aubry and Rau, Civil Law Translations, Volume 3, Section 725; Planiol, Civil Law Treatise, Volume 3, Part 2, No. 2843; 22 Demolombe, Cours de Code Napoleon, des donations entre vifs et des testaments (1876) No. 238; and Oppenheim, Successions and Donations, 10 Louisiana Civil Law Treatise, Section 141 at page 264 (1973). Since the sale of the premises in question was accomplished by the curator of the testatrix, and since the testatrix did not personally give her consent or approval to the sale at the time of its consummation, it must be the holding of this Court in accordance with the above cited authorities that this action did not constitute a revocation as contemplated by the pertinent articles of the Louisiana Civil Code.
"The next issue to determine is whether or not the bequest of the testatrix lapsed pursuant to law. Article 1700 of the Civil Code provides that `The legacy falls if the thing bequeathed has totally perished during the lifetime of the testator.' Here again we find no Louisiana jurisprudence to guide us on the issue of whether or not the sale of an interdict's property by her curator is equivalent to a loss of the thing bequeathed under the provisions of Article 1700. As is admitted in the brief of the plaintiff, the residence is gone forever and there is no legal means to recover it. It would appear that the leading authority in Louisiana and the majority of the French commentators support the view that the alienation of the thing bequeathed by the curator of an interdict observing all legal formalities and in due course of his administration caused the legacy to lapse, so that the legatee can claim neither the value thereof nor the price still due. In Oppenheim, Successions and Donations, 10 Louisiana Civil Law Treatise, Section 141 at page 264 appears the following wherein the author quotes with approval from 3 Planiol, Civil Law Treatise, No. 2837 (LA. State Law Inst. Transl. 1959) as follows:
`In discussing tacit revocation by alienation of bequeathed property, as provided in Article 1083 of the Code Napoleon, Planiol states:
`Tacit revocation also results from alienation of the object of the bequest (Art. 1038). Every alienation implies revocation, even if it is not final, for instance if it is made with the right of repurchase (remere). Although the testator-seller may use his option and own the object at the time of his death, the bequest still remains revoked. The effect is the same as if the property had returned into the testator's possession because of annulment of the alienation. Art. 1038 provides for this case expressly, so as to decide the controversies which existed in the old law. All this means that the simple intention to alienate brings about the revocation. Thereafter the ultimate fate of the alienation means little.
`It follows that: (a) if the alienation is made with a suspensive condition, the bequest is revoked only when the condition materializes; (b) no revocation results if the alienation was not voluntary (for instance, expropriation for public purpose; or sale by the tutor of a testator who has become an interdict). But the legatee still does not gain anything, since the bequest lapsed. (Emphasis added.) *576 "In Aubry and Rau, Civil Law Translations, Volume 3, Section 725 at page 507 appears the following:
`Finally, the alienation of the things bequeathed gives rise to a presumption of revocation of legacies only when the alienation is the voluntary act of the testator. The presumption of revocation attaches neither to a sale at the instance of creditors nor to the sale by licitation provoked against the testator by his co-owners. Therefore, if the testator again becomes the owner of the things bequeathed under any other title, the legacy should be executed; otherwise, the legacy will be considered as having lapsed. This is what would occur when a thing bequeathed by an insane person by a testament executed prior to his interdiction has been subsequently alienated by his tutor during his interdiction.'
"In Aubry and Rau, Civil Law Translations, Volume 3, Section 726 at page 512 appears the following:
`Likewise, the alienation of the thing bequeathed during the life of the testator without his participation in the matter and for legitimate purposes and according to law, should be assimilated to the loss thereof. Thus it is that, where the testator has been interdicted after the confection of the testament, the alienation of the things bequeathed made by his tutor observing all legal formalities and in due course of his administration, causes the legacy to lapse, so that the legatee can claim neither the value thereof nor the price still due. So it is also, that the expropriation for public purposes of the immovable bequeathed during the life of the testator, causes the lapse of the legacy, the legatee having no right to the indemnity paid for the expropriation.' (Emphasis added.)
"It would also appear from the brief of the plaintiff that Demolombe concurs with the above stated view while Troplong holds the contrary opinion. See Demolombe, XXII, 339; Troplong, IV, 2096.
"The record of the interdiction proceedings shows that all of the formalities of law were complied with and this is admitted in the brief of the plaintiff. It is well settled in our law that a curator may sell the property of an interdict "for any purpose." See Articles 4301 and 4554 of the R.C.C.P. It is also well recognized in our law that a tutor or curator acts for and on behalf of the person for whom he is appointed. See R. C. C. Articles 31, 32, 337, 389, 404, and 415. An interdict as a matter of law is incapable of acting and of administering his estate and the curator acts and administers it for him and stands in his shoes. In the case of Converse v. Dicks, 179 La. 339, 154 So. 17 (1934) the Louisiana Supreme Court held that where a plaintiff obtained a money judgment against a defendant interdict that the interdict's curator could not be a garnishee under the judgment because the curator was not a third person as required by law. In reaching this conclusion and reversing the trial court and setting aside the garnishment proceedings the Louisiana Supreme Court noted as follows:
`An interdict, in law, is incapable of acting and of administering his estate. There is nothing which he is capable of doing legally. His curator acts and administers for him. In all matters pertaining to the possession, keeping, care, administration, and preservation of the interdict's estate, the curator stands in his place and stead. In such matters, the interdict has no legal existence, except through his curator, in whom `he lives, moves and has his being.' His curator is substituted for him, is the human agency through whom the interdict acts, and the two are legally inseparable. Therefore the curator of the interdict is not a third person, as to the interdict, and hence the exception must be sustained, for it is only third persons to the suit in which the moneyed judgment is rendered who may be garnisheed, and not parties to the suit.' (Emphasis added.)
"The plaintiff claims that even if it is held that the legacy has lapsed in accordance with law that nevertheless since the money received from the sale of the residence was part of a sum borrowed by the Mattingly *577 Tractor and Implement Co., Inc., for operating capital and is represented by a promissory note which formed part of the testatrix's estate and has remained due to the estate that under these circumstances he should be entitled to a proportionate amount of the proceeds to compensate him for the amount of the purchase price of the intended legacy. Once again there appears to be no Louisiana jurisprudence on the issue of whether or not a legatee would be entitled to money remaining in the testator's estate from a lapsed legacy. However, there is jurisprudence in Louisiana dealing with that question as applied to revoked legacies. In the Succession of Batchelor, 48 La Ann 278, 19 So. 283 (1896), the testator bequeathed a promissory note which was later collected by him a short time before his death. The Louisiana Supreme Court in this case held that the legacy was the note and not a sum of money and that accordingly the legatee was not entitled to the money remaining from the note. In reaching this conclusion the Court at page 284 of the Southern Reporter made the following pertinent observations:
'A thing is regarded as having perished, not only when it has been destroyed, but also when it has been changed into another thing or substance.
. . . . .
'The requirement in regards to intention to substitute the money collected for the note also applies as in sales. In each the sale, or the collection of the notethe thing bequeathed has undergone an absolute change, insofar as relates to title and the character of the property owned. The principle has been illustrated as follows: If the testator has bequeathed wool, with which he subsequently made cloth, the legacy is extinguished; and it is the same if, having bequeathed boards, he used them in making an armoir, or in the construction of a ship.'
"See also Succession of Locarno, 206 La. 284 [384], 19 So.2d 175 (1944) (House sold and purchase price partially used by testatrix) and Succession of McBurney, 162 La. 758, 111 So. 86 (1927) (Residual legacy of money in bank partially withdrawn and invested in bonds). Since it has been held that a particular legatee is not entitled to the proceeds of the sale of a revoked legacy, it would seem therefore that by analogy the same rule must also be applicable in the situation of a lapsed legacy. This would be especially true in the instant case where the original premises were converted into cash which was thereafter converted into a promissory note.
"In this case the alienation of the thing bequeathed was done in accordance with the provisions and formalities required by law and no fraud has been alleged or proven. The evidence in the instant case shows that Mr. and Mrs. Herpel were not aware of the legacies made to Mr. Spiller by Mrs. Mattingly until after her death. In his brief the plaintiff concedes that Mr. Herpel complied with all of the formalities required by law in the sale of the particular bequest, and the evidence shows that Mr. Herpel felt that he was acting in a prudent manner and in the best interest of Mrs. Mattingly when he recommended the sale of the property which was subsequently approved by the Court.
"It is well settled in the law that in the absence of forced heirs, a lapsed legacy passes to the universal legatee. Willis v. McKeithen, 184 So.2d 748 (La.App. 2d Cir, 1966); Succession of Abraham, 136 So.2d 471 (La.App. 3rd Cir, 1962); R. C. C. Arts. 1605, 1606, 1609, 1625, and 1697; and Oppenheim, Successions and Donations, 10 Louisiana Civil Law Treatise, Section 151 at page 269. Since Mrs. Herpel is a forced heir and the universal legatee it would appear under the law that she is entitled to the benefit of the lapse of the legacy. To hold otherwise would be to create a distinction in the law of the State of Louisiana that has not heretofore existed and would further place an intolerable burden on the curators of interdicts. If such were the law curators would in effect be prevented from making alienations of an interdict's property for fear that there may be a legacy for which the proceeds would be accountable pending the death of the interdict and the *578 final disposition of his estate. Such a holding would interject substantial inflexibility on the ability of the curator to manage the interdict's affairs when the trend of the public policy of this state in this area has been to the contrary. Accordingly it is the holding of this Court that under the facts and circumstances of this case that the particular legacy of the residence located at 403 Ridgefield Road in Thibodaux, Louisiana made by Mrs. Mattingly to the plaintiff in this case has lapsed and the proceeds of the sale of this legacy devolve to the universal legatee, the defendant herein.
"With reference to the actio de in rem verso claim, counsel for the plaintiff has presented a detailed and thorough analysis of the applicable Louisiana cases, and counsel for the defendant has acknowledged this in his brief. Oil Purchasers, Inc. v. Kuehling, 334 So.2d 420 (La.1976); Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116 (La.1974); Brignac v. Boisdore, 288 So.2d 31 (La.1974); Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967); Sylvester v. Dupre, 333 So.2d 447 (La.App. 3rd Cir, 1976); Landesman v. Ford Motor Co., 331 So.2d 196 [106] (La. App. 1st Cir, 1976); State ex rel Guste v. Estate of Himbert, 327 So.2d [698] (La.App. 1st Cir, 1976); Cameron Crew Boats, Inc. v. Twin Disc, Inc., 325 So.2d 684 (La.App. 1st Cir, 1976); Cowley v. Logan, 324 So.2d 500 (La.App. 2nd Cir, 1975); V-8 Taxi Cab Service, Inc. v. Hayes, 322 So.2d 442 (La.App. 4th Cir, 1975); United States Fire Ins. Co. v. Lawson, 317 So.2d 217 (La.App. 4th Cir, 1975); Hoover v. Hoover, 313 So.2d 358 (La.App. 4th Cir, 1975); Coleman v. Bossier City, 305 So.2d 444 (La.1974); State Farm Fire and Casualty Co. v. Cities Service Oil Co., 251 So.2d 201 (La.App. 3rd Cir, 1971); Joslyn v. Manship, 238 So.2d 20 (La.App. 1st Cir, 1970); Louviere v. Shell Oil Co., 509 F.2d 278 (5th Cir, 1975); and Brenham v. Southern Pacific Co., 238 [328] F Supp 119 (WD La, 1971). As pointed out there are five prerequisites to the successful suit by actio de in rem verso: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment (4) there must be an absence of justification or cause for the enrichment and impoverishment, and finally, (5) the action will only be allowed when there is no other remedy at law. A review of the above cited cases indicates that this type of action has never been applied to anything similar to the situation in the instant case. It is further the opinion of this Court that the plaintiff does not meet the prerequisites required by law for the reasons hereinafter stated.
"There was no enrichment of the defendant and impoverishment of the plaintiff in this case because at the time that the object of the particular legacy was sold, neither the plaintiff nor the defendant had any right, title or interest in said object. A donation mortis causa does not vest in the particular legatee any property right at the time that it is executed by the testator. The title to the bequeathed property remains in the testator until his death and he can do with it as he pleases. Succession of Batchelor, supra. Under the general provisions of Article 940 of the Louisiana Revised Civil Code the title to the property of a deceased is not vested in his heirs until his death at which time title passes immediately and by operation of law. This article incorporates the maxim le mort saisit le vif and means that the legal rights of the testator go to his heirs independently of any act on their part. For an excellent discussion of this legal proposition see Oppenheim, Successions and Donations, 10 Louisiana Civil Law Treatise, Section 51 at pages 126, et seq. However, this general rule is not applicable to particular legacies. R. C. C. Article 940. Under the provisions of Article 1626 of the Louisiana Revised Civil Code `the particular legatee can take possession of the thing bequeathed. . . only from the day the demand of delivery was formed, according to the order herein before established or from the day on which that delivery was voluntarily granted to him.' It appears clear under the law that particular bequests of cash or specific property to a legatee are legacies under particular title or particular legacies in the contemplation of the law. *579 See Jones v. Mason, 124 So.2d 795 (La.App. 2nd Cir, 1960); Succession of Moore, 196 So. 79 (La.App. Orleans, 1940). It is further clear that pursuant to the provisions of Article 1630 of the Louisiana Revised Civil Code that the "delivery of legacies under a particular title must be demanded of the testamentary executor, who has the seizin of the succession." Thus it is clear that at the time of the sale of the property in question neither the plaintiff nor the defendant had any right, title or interest in same since Mrs. Mattingly was still alive and accordingly the defendant was not enriched and the plaintiff was not impoverished.
"It would further seem that the requirement of connexity is not present even if we were to assume the enrichment and the impoverishment. The civil law actio de in rem verso is grounded upon the general theory of quasi-contractual obligations founded upon the unjust enrichment. The plaintiff has not established a quasi-contractual obligation between the plaintiff and the defendant. Mrs. Herpel was not the curator of Mrs. Mattingly's estate and person. As the testamentary executrix of the succession, Mrs. Herpel is not responsible for the handling of the succession until the moment of her mother's death, at which time the property in question had already been sold pursuant to an order of the Court. Just because the legacy lapsed in accordance with law, does not create a quasi-contractual obligation between the parties to this litigation.
"The plaintiff has failed to show a lack of justification or cause. When Mrs. Mattingly became unable to manage her own affairs she was interdicted in accordance with law. Thereafter when the curator deemed it advisable to sell the particular legacy which is the subject of this suit the application for authority and the judgment of the Court authorizing the sale were provided for by law. Apparently the sale was transacted in accordance with law since it has not been attacked and the plaintiff concedes its validity. After Mrs. Mattingly passed away, her succession was opened, her will was probated and the testamentary executrix was appointed, all in accordance with law and for the reasons above assigned this Court has now ruled that the particular legacy has lapsed as a matter of law and that under the law when a particular legacy lapses it or the proceeds devolve as a matter of law to the forced heirs and/or the universal legatee. For these reasons there is a lawful cause or justification for the result reached in these proceedings.
"Accordingly, it is the holding of this Court that the actio de in rem verso does not lie in favor of the plaintiff and against the defendant in these proceedings."
The judgment appealed from is, therefore, affirmed, at plaintiff's cost.
AFFIRMED.