HOOD, Judge.
Oscar Sylvester, Jr., seeks to recover from his lessee, Robert Daigle Dupre, a part of a penalty which was assessed against Sylvester for overplanting a crop of rice in 1971. The penalty was imposed under the Agricultural Adjustment Act of 1938 for planting in excess of the farm marketing quota set for rice by the Secretary of the U. S. Department of Agriculture. The trial court rendered judgment in favor of plaintiff, and defendant appealed.
The issue presented is whether plaintiff is entitled to recover from defendant, on the grounds of unjust enrichment, a pro-rata part of the penalty which was paid by plaintiff.
The parties entered into' a written agricultural lease contract on November 22, 1970, under the terms of which Sylvester leased to Dupre for rice farming purposes three separate tracts of land or farms, one of which is located in St. Landry Parish, and two are in Evangeline Parish. The contract provided that Sylvester also leased to Dupre “all of Lessor’s rice acreage, being 500 acres more or less,” to be planted on one or more of the three farms, to be agreed upon between Lessor and Lessee.
The lease was for a term of six years, beginning November 22, 1970. It provided that the Lessor was to furnish Lessee with all water necessary for the growing of rice crops on said farms, and that Lessor was to pay forty-five (45%) percent of the expenses of fertilizer, insecticides, poisons, weed controls and airplane expenses. In consideration therefor, the Lessee agreed to pay the Lessor, Sylvester, a rental of forty-five (45%) percent of all rice raised by Dupre on those farms.
Pursuant to the provisions of that lease, Dupre planted approximately 500 acres of the leased property in rice in 1971. Sylvester furnished water for the crop and he paid his share of the expenses incurred in raising that crop, as provided in the lease. The 1971 rice crop was harvested and sold, and the proceeds of the sale were divided between the Lessor and the Lessee in accordance with the terms of the lease contract. Sylvester received forty-five (45%) percent of those proceeds and Dupre received fifty-five (55%) percent of them.
Dupre planted another rice crop on the leased property in the .spring of 1972. A disagreement arose between him and Sylvester during that crop season, however, and Dupre did not complete or harvest that crop. Some litigation ensued between the parties relating to the 1972 crop.
During the fall of 1972 a representative of the Agricultural Stabilization Conservation Service, an agency of the U. S. Department of Agriculture, investigated the farming operations which had been conducted on the leased property in 1971, and a determination was made that Sylvester or his tenant had overplanted the property in rice that year by 77.3 acres. Sylvester was listed as the “operator” of the farm on the records of the Evangeline Parish office for the ASCS program, and he was assessed a penalty of $11,945.34 for that overplanting. He promptly paid the full amount of that penalty.
Sylvester appealed to the “County Committee” to review the above assessment, and that committee determined (1) that the property had been overplanted 32.7 acres instead of 77.3 acres, and (2) that the penalty imposed against Sylvester should be reduced from $11,945.34 to the sum of $5,053.-22, necessitating a refund of $6,892.12. That determination was accepted by the U. S. Department of Agriculture, and the *450 sum of $6,892.12 was refunded to Sylvester. The net amount paid by Sylvester as a penalty for overplanting the 1971 crop thus was $5,053.22.
Sylvester made demand on Dupre for reimbursement of fifty-five percent of the net amount which he paid as the penalty for overplanting rice in 1971, contending that Dupre owed that amount as his pro-rata share of the penalty. Dupre refused to reimburse plaintiff, and this suit was filed. After trial, judgment was rendered by the trial court in favor of Sylvester condemning Dupre to pay him the sum of $2,779.27, that being fifty-five percent of the penalty paid by plaintiff. Dupre appealed.
The trial judge found, as we interpret his reasons for judgment, that the overplanting of rice on the leased property in 1971 was unintentional. He concluded that since Du-pre had received fifty-five percent of the proceeds of the sale of the rice which was raised on the excess acreage, he was obliged under the maxim of unjust enrichment to reimburse plaintiff that percent of the penalty which was assessed for the overplant-ing.
Articles 1964 and 1965 of the Louisiana Civil Code provide:
“Art. 1964. Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.”
“Art. 1965. The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity.” (Emphasis added).
Our law recognizes the general theory of a quasi contractual obligation, or an actio de in rem verso, founded on unjust enrichment. There are five prerequisites to a successful suit by actio de in rem verso: (1) There must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and resulting impoverishment; (4) there must be an absence of “justification” or “cause” for the enrichment and impoverishment; and finally (5) the action will only be allowed when there is no other remedy at law, i. e., the action is subsidiary or corrective in nature. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967); Brignac v. Boisdore, 288 So.2d 31 (La.1973); Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116 (La.1974); Coleman v. Bossier City, 305 So.2d 444 (La.1974).
All of these prerequisites are present in the instant suit. Dupre planted, cultivated and harvested the rice which was raised on the excess acreage, and he received fifty-five percent of the proceeds of the sale of that rice, although he has paid no part of the penalty which was assessed under the ASCS program because of the fact that rice was planted on that acreage. The entire penalty was paid by Sylvester, who received only forty-five percent of the proceeds of the sale of the crop, and who received no consideration or benefit from the payment of Dupre’s pro-rata share of that assessment. Dupre thus was enriched, Sylvester was impoverished, there was a connection between the enrichment and the resulting impoverishment, and there was absence of cause for the enrichment and impoverishment. There appears to be no remedy at law, other than an action based on unjust enrichment.
The contract was silent as to how the payment of penalties assessed under the ASCS program were to be apportioned, *451 if any such penalties became due, and the courts must apply the equitable principle that no one ought to enrich himself at the expense of another. LSA-C.C. art. 196S.
Applying the above rules, it appears that there was no error in the judgment of the trial court which allowed plaintiff to recover from defendant a pro-rata part of the penalty which was paid by plaintiff for the overplanting.
Defendant contends, however, that Sylvester was the “operator” of the farm in 1971, that as such it was his duty to see that the proper acreage was planted, and that he committed an unlawful act by planting rice that year, and by failing to declare to the U. S. Department of Agriculture a tract of land on which a part of that crop was planted. He takes the position that Sylvester was solely responsible for the overplanting of rice in 1971, that the penalty which he was required to pay was a “fine Mr. Sylvester had to pay . . . for violation of a criminal law, and that under the Clean Hands Doctrine he should not be entitled to have someone else share in his penalty for violating the law.”
Dupre relies on LSA-C.C. arts. 1891 and 1892, which provide:
“Art. 1891. The object of a contract must be possible, by which is meant physically or morally possible. The possibility must be determined, not by the means or ability of the party to fulfill his agreement, but by the nature of the thing which forms the object of it.”
“Art. 1892. That is considered as morally impossible, which is forbidden by law, or contrary to morals. All contracts having such an object are void.”
He argues that the plaintiff is not entitled to recover on the basis of an implied contract for reimbursement, because such a contract in this instance would be void as being morally impossible, forbidden by law and contrary to morals.
The law is settled that an action for the collection of penalties under the Agricultural Adjustment Act of 1938 is strictly civil in nature. The penalties imposed under that act for planting crops in excess of the acreage allotment are not fines or forfeitures imposed for the commission of an unlawful act, but instead are civil penalties or assessments. United States v. Appling, 239 F.Supp. 18S (D.C.1965); Miller v. United States, 242 F.2d 392 (6 Cir. 1957), cert. denied, 355 U.S. 833, 78 S.Ct. 48, 2 L.Ed.2d 44; United States v. Stangland, 137 F.Supp. 539 (N.D.Ind.1956), affirmed, 7 Cir., 242 F.2d 843.
In Miller v. United States, supra, the court said:
“The Agricultural Act provides not for ‘forfeiture’ but for a money judgment for the penalties established for noncompliance. Under the Act a producer’s overproduction of wheat contrary to the allotments made by the Secretary of Agriculture and by the County Committee is not invested with a criminal character. It is not a crime to produce in excess of the marketing quota. In fact, a producer may grow whatever quantity of wheat he wishes, provided the pays the civil penalty. Neither is the marketing of wheat in excess of the quota prohibited. The purpose of requiring the penalties was not to raise revenue for the government but to discourage the planting and marketing of more than the quotas established. These circumstances demonstrate that the action for penalties under the Agricultural Adjustment Act is neither criminal nor quasi-criminal.” (citations omitted).
The penalty which Sylvester was required to pay in the instant suit was assessed under the Agricultural Adjustment Act of 1938 (7 U.S.C.A. 1281, et seq.). That Act establishes marketing quotas for tobacco (7 U.S.C.A. 1311-1316), corn (7 U.S.C.A. 1321-1330), wheat (7 U.S.C.A. 1331-1340), cotton (7 U.S.C.A. 1341-1350a), rice (7 U.S.C.A. 1351-1356), and peanuts (7 U.S. C.A. 1357-1359).
*452 The penalty imposed in Miller, supra, was for the overproduction of wheat, but we think the rule applied in that case is applicable to the overproduction of any of the agricultural products covered by that act, including rice.
Our conclusion is that the penalty imposed on Sylvester by the U. S. Department of Agriculture for the overproduction of his rice marketing quota in 1971, was a civil penalty, assessed under the Agricultural Adjustment Act of 1938. We know of no law which forbids him from recovering a pro-rata part of that penalty from his tenant, and we find that it is not contrary to morals to permit him to do so.
Defendant contends, finally, that plaintiff is barred from recovery by the “Clean Hands Doctrine.” His argument is that Sylvester knowingly and willfully over-planted his 1971 rice crop, that he represented to defendant that the acreage planted was within his marketing quota, and that he thus misled defendant into believing that the rice crop planted in 1971 complied with the acreage allotment made to Sylvester that year.
We have concluded, as the trial judge apparently did, that the overplanting which occurred in 1971 was unintentional. If any fault, negligence, misrepresentation or bad faith is to be attributed to Sylvester, however, then it seems to us that Dupre also must be charged with some responsibility for overplanting the leased premises.
The evidence shows that Dupre was familiar with the leased property and with the crops which had been planted on that land before he entered into the above lease contract. He assisted Sylvester in farming the same property in 1969 and in 1970, and he alone planted, cultivated, harvested and sold all of the rice which was raised on that property in 1971. He knew the approximate acreage allotment to which Sylvester was entitled in 1971, and he was able to obtain the exact allotment and to measure the land planted if he had desired to do so. Defendant argues, however, that he did not check plaintiff’s acreage allotment in the ASCS office, that he planted substantially the same number of acres to rice in 1971 as Sylvester had planted the previous year, that Sylvester had represented to him that the number of acres planted in 1970 did not exceed his marketing quota for that year, although Sylvester knew that he had exceeded his quota that year, and that plaintiff thus misled defendant in believing that the amount of rice he planted in 1971 was within his allotment.
Dupre was an intelligent, experienced farmer. He was 31 years of age at the time of the trial. He had received a B. S. Degree from Louisiana State University in New Orleans, majoring in chemistry and minoring in physics. He was related to Sylvester by marriage, and he worked for plaintiff assisting in the production of rice from the leased premises in 1969 and in 1970. He obviously was familiar with the ASCS program. He was as able as was Sylvester to measure the acreage which was planted in 1971 and to determine the acreage allotment which the latter had at the time the crop was produced. Dupre, in fact, caused the property to be measured by ASCS officials in the fall of 1972 so that he could obtain evidence for use in the litigation which was then pending relating to the 1972 crop, and we assume that as a result of his efforts in that respect a determination was made that the property had been overplanted in rice in 1971. If Dupre did not know that the leased property was overplanted to rice in 1971, then we think it is probable that Sylvester also was not aware of the overplanting.
We have reviewed all of the evidence, and we conclude, as the trial judge apparently did, that the overplant-ing which occurred in 1971 was unintentional, that plaintiff did not intentionally mislead defendant into believing that the 1971 crop was within Sylvester’s acreage allotment that year, and that plaintiff thus *453 is not barred from, recovery by the so-called “Clean Hands Doctrine."
Our conclusion is that there is no error in the judgment of the trial court which decrees that Sylvester is entitled to be reimbursed a pro-rata part of the penalty which he was assessed for overplanting the 1971 rice crop.
The judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
AFFIRMED.
PAVY, J., dissents.